Opinion of the court delivered by
Judge Haywood.—
I shall in this opinion confine myself entirely to an estate in lands, coming from the father.
The acts of 1784, ch. 22, sec. 3 and 7, and 1784, ch. 10, sec. 3, have three grand objects; to destroy primogeniture, to destroy the indivisibility of real estate, and to preserve real estate in the blood of the transmitting ancestor. By section 3, if it come to the son by' descent from the father, and the son die, it shall go to his paternal brothers of the whole and half blood. If the. son derive the estate from the father, and die in the lifetime of the father, it will go to the father, by the seventh section of 1784, ch. 22. This derivation to the son must be by deed; for if by devise or descent, the father must necessarily be dead before the death of the son. But what if the son who is in by gift of the father, die after the father? Those who represent the father, shall stand in his place— the paternal uncles and aunts of the deceased son, sec. 3 and 4: and if paternal uncles, then also paternal brothers, if any such there be. If the estate be actudlly purchased, and the son die without child or brethren, and the father be dead, the inheritance shall go to the heirs on the part of the father, (the uncles and aunts of the deceased,) and by the same reason to paternal brothers and sisters, if any there be. If it be otherwise acquired, as by will or deed of a stranger, and the son die without child or brethren, and the father be dead, the heirs on the part of the father shall have the estate, to wit: the paternal uncles and aunts of the deceased, 1784, ch. 10, sec. 3; and by the same rule, the paternal brothers of the deceased, if any there be. It can never be imagined, that preference of the paternal side shall prevail, where the descent is to uncles and aunts, and that it shall not prevail where the descent is to brothers. If the estate must go to paternal brothers, when it comes by descent from the father, and yvhen it comes to the deceased by deed from the father,and *117 when it came by deed or will from a stranger, which are cases specified in 1784, ch. 22, sec. 3 and 7, and in 1784, ch. 10, sec. 3, what reason is there for a different rule, where it comes by devise from the father? If in all the recited instances, preference is given to the family of the father, why not also in the case of devise, where the same reason and motive predominate as in all the others?
It is the coming of the estate from the father to the son, and not the coming by descent, or any other particular mode, that the law regards. The construction to be made on the act, must be compatible with (his general intent. Would it not be evidently incompatible with the principles of this act, to prefer the father’s family, where a deed was made by a stranger to the son, and not prefer it, in case of a devise from the father to the son? If, then, the act of 1784, ch. 22, sec. 3 and 7, and the act of 1784, ch. 10, sec. 3, remain as they were when made, the paternal relations in case of a devise from the father to the son, (who dies,) succeed to the estate in exclusion of the maternal relations, and more particularly paternal brothers in exclusion of maternal ones. Again: If the son die possessed of an estate actually purchased by himself, without child or brethren, and his father be dead, the estate goes to the mother for life, not in fee; and yet, it is said, if her child be living, that such child, which is not as near as the mother, shall take when the mother could not. If the father’s estate shall not go to the mother in fee, how is it that it shall go to the child of the mother in fee?
The plaintiff cannot be entitled under the acts of 1784, whether the estate come by descent or devise. And in relation to this point, if the acts and sections aforesaid be repealed, then although the estate came by descent, the exclusion of the maternal relations no longer continues; and the only question will be, whether the said sections of the two acts of 1784, be repealed or not by the act of 1796, ch. 14.
I will lay down one or two rules of construction, and - t proceed to the investigation. In construing statutes, *118 the spirit of the act ought more to regarded than the letter, (8 Term 254. 3 Call 303, The court will not favor the repeal of a statute by implication, (2 Wash. 296.4 Ba. Abr. 638. The general words of a latter statute, do not repeal the special provisions of a former, unless the intent to do so is plain, (6 Rep. 19. 11 Rep. 63. 1 L. Ray. 317. What then are the words of the act of 1796 ch. 14; “all real estates of inheritance, as well as personal, shall descend to,and be divided between brothers and sisters,as well of the half blood as of the whole blood, in the same proportions, as they have heretofore been divided between brothers of the whole and half blood only.” What is the spirit and meaning of this act? That as real estates were heretofore divided, between brothers of the whole and half blood only, hereafter they shall be divided between brothers dnd sisters, as well of the half blood as of the whole blood. The term half blood has the same meaning in both places; for it is one rule of construction, that the same term used in several parts of a statute, shall have the same meaning in all. Here the meaning is precisely ascertained; the term, brothers of the whole and half blood only, is used in this paragraph, and without any uncertainty or doubt, means brothers of the half, on the side of the father, exclusively of maternal brothers.— Therefore, brothers and sisters of the half blood, in the preceding part of the paragraph, means half blood on the side of the father, otherwise half blood in the same sentence will mean half blood generally, or half blood on the father’s side, without any sign or token to indicate that the legislature intended different meanings to each.
When a plain, rational and consistent meaning can be given to this act, without interfering with the special provisions of 1784 ch. 22, sec. 3, shall we abandon,the plain, and rational and consistent construction, and adopt one, which is inconsistent with those special provisions, and thereby repeal them? Shall we favor the repeal of a statute by implication? Shall we by general words repeal the special provisions of former statutes, where there is not a plain intent to do so, nor even a conjectural intent, un *119 less by previously giving to the same term or'phrase in the same sentence, two different and contradictory meanings? And this too, where we are told by the express words in the title, that the intent is to amend the former laws; and when likewise in the body of the latter act, there is a plain addition to the former, by the introduction of females into the inheritance ? There is one main and prominent purpose apparent, the introduction of females; all other parts of the act, may naturally and fairly be considered, in subservience to this main object.— Shall we turn them to another less obvious purpose, and make the auxiliary, dependent parts of the act, independent of the former, having a much greater object in view than the former, the repeal of the act of 1784? Had we not better wait for the expressed will of the legislature, than thus to apprehend it by conjecture? If an act of the legislature is to be construed by its spirit, then here is an act which needs that mode of construction as much as any that ever was passed; there is no express provision in this act tor daughters, as well as sisters; but surely daughters, were as much intended to be introduced and admitted into the succession as sisters. And how can this be effected by construction? By considering that the act contemplated a descent from a deceased father to persons who stood in the relation of brothers and sisters to each other, as well as a descent from a brother to such persons. And when in relation to the real estate of a deceased father, it is said that it shall descend to brothers and sisters as well of the half blood as of the whole blood, does it not mean brothers of the half blood, on the father’s side, who are the children of the father, as well as the others? If so, then here is the same meaning of the term half blood, exclusive of the maternal relations of the half blood. If this be not so, then are daughters not admitted with sons, which cannot be the intent of the legislature. If when the descent is from the father, half blood means paternal half blood, by what rule is it that the same identical phrase means half blood both on the mother’s and father’s side where the descent is from a brother? *120 And why have the daughters never been mentioned itt any subsequent act, unless for this reason only: that they Were deemed to be already within the words of the act of 1796, whether as taking the father’s estate with their brothers, or as taking the brother’s estate with their brothers. Nor can it be credited, that the legislature should intend the subversion of the grand principle of preference to the blood of the transmitting ancestor, without giving the least express intimation that they intended to do so. They would, as they ought, have proclaimed their intention in the most unequivocal terms, so as not to admit óf a doubt with respect to the repeal.
Had the act of 1798 stopped at the end of the sentence, “brothers and sisters as well of the half as of the whole blood,” the division would have been equal*, or if this was doubted, how easy was it to add, share and share alike? The superadded and following words indicate most certainly an intent to restrain the generality of that sentence. A division proportioned before 1796, between brothers of the whole and half blood only, was a division proportioned to the number of paternals only, without regard to the children of the mother, by another husband. And so now it must be proportioned to the number of brothers and. sisters of the whole and half bbrod on the side of the father only, without regard to those on the side of the mother. If the superadded words have not this restrictive meaning, they leave, the preceding sentence justas it was, and themselves stand for nothing; whereas the rule of construction is, that every sentence and word must have its appropriate meaning and effect; (3 Call, 405; 6 Ba. Abr. 380; 19 Vin. 527; 4 Ba. Abr. 637. The word only, is entitled to consideration. It means brothers without sisters, making the sense to be, that brothers and sisters shall hereafter divide, as formerly brothers only did. Divide what? The estate that came from the father to the son. Amongst whom? The paternal brothers. If it means, that paternals and mater-nals shall now divide, as paternals formerly did, the whole sentence operates nothing: for without, the half *121 blood on both sides, would have taken. But say it establishes a well-known standard to divide by, and that this standard excludes the maternals, then every word, as well as this word “only,” has a material effect and energy. Most certainly the word “only,” was intended to limit the preceding expression; and what other limitation can it be, unless it he that of brothers and sisters of both bloods, to paternal only?
Contemporaneous exposition has been appealed to. It is deservedly of the highest authority: (2 Term, 234.) And if it be on the side of the argument for a repeal, the question would be nearly decided. But in the lapse of 30 years, no such decision, that I can hear of, has ever been made, nor any estate holder), that I can hear of, upon a professional opinion given to this effect.
The consequences of a repeal may have weight in forming a construction. Let us take a view of some of them. Suppose A dies, leaving two sons, and that his widow marries and has nine children, and that then one of the two sons dies. Was it the intent of the act of 1796, ch. 14, that nine tenths of the father’s estate shall go to the ehildren of the mother, and only one tenth to the surviving son of the father? This would be a consequence of the repeal.
Again: as the law of 1784 stands, those who are to take, are fixed unalterably, without any future alteration, and partition can immediately be made. But if it be repealed, and brothers and sisters on the mother’s side be introduced, then the estate which vests in a paternal brother, on the death of his brother, must be subject to open, and his share diminished, whenever another and another child of the mother is born; and no one can know, so long as the mother is alive, how either to sell or purchase the estate. And if at any time, a partition be made, no one can know how long it will stand: for he cannot know whether another child of the mother will be born or not. The injustice and extreme inconvenience of such a case, plead strongly against the adoption by *122 implication, of a construction which leads inevitably and directly to such a result.
One word now with respect to the petition for a division. The title to all the lands to be divided, must be settled by legal adjudication, or other competent means, before a division can be made. The title should be settled by a court of law, with the aid of a jury and their verdict, before a partition can be ordered. For if this latter precede the adjustment of title, and this be after-wards tried, and found against the petitioner, then either the whole division will stand for nothing, or a decision without a jury upon the petition for a division will be conclusive; and this would be in direct opposition to the constitution, and to all experience and practice hitherto known, and in direct opposition to 4 Hay. 295. And what case to show, that a division cannot be now made, so apposite as the one before us, if the argument for the maternals be correct. For if now divided between the son of the father and the plaintiff, the maternal daughter, and others be born hereafter, there must be a new division upon every new birth, and whatever improvements are made upon the allotments made by a former division, must be lost to him who makes them, and whatever sales have been made in the mean time, must be avoided, to let in this new claim, which a new birth has produced,. Petition dismissed.